Filed 9/15/15  pub. order 10/15/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANDRAE A., a Person Coming Under the Juvenile Court Law. <br><br> _____ <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANDRAE A., <br><br> Defendant and Appellant. | B262556 <br><br> (Los Angeles County Super. Ct. No. CK71038) |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolf Diaz, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel for Respondent.

_____

Appellant Andrae A.[1] was a juvenile court dependent from 2007 to 2015. In 2014, a Welfare and Institutions Code section 602[2] petition alleging violations of Penal Code section 288, subdivision (a) (lewd or lascivious acts with a child under the age of 14) was sustained against him, and in August 2014, Andrae was committed to a period of confinement with the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). Andrae subsequently turned age 18, and the juvenile court terminated its dependency jurisdiction over him.

Andrae contends that notwithstanding his commitment to the DJJ and nonminor status, the juvenile court should have maintained dependency jurisdiction over him and provided him with services under the California Fostering Connections to Success Act, Assembly Bill No. 12 (2009-2010 Reg. Sess.) (A.B. 12). We find no error, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Andrae's Dependency and Placement in
### Long-Term Foster Care

Andrae (born Nov. 1996) was detained from his mother by the Department of Children and Family Services (DCFS) in December 2007, when he was 11 years old. Andrae was adjudicated a dependent of the juvenile court in April 2008 pursuant to section 300, subdivisions (b) and (g). In March 2009, the juvenile court terminated his mother's reunification services and ordered Andrae placed in long-term foster care.

---

[1]     Andrae's name is spelled "Andrae" in some juvenile court documents and "Andre" in others. For consistency, we use "Andrae" throughout.

[2]     Welfare and Institutions Code section 602, subdivision (a) provides that a person under 18 years of age who commits a crime "is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

All subsequent undesignated statutory references are to the Welfare and Institutions Code.

In December 2009, a supplemental petition was filed alleging that Andrae's current caregiver had requested his removal from her home. An accompanying report said that Andrae, then age 13, had engaged in anal and oral sex with the caregiver's nine-year-old daughter. Andrae subsequently admitted having been sexually abused by an older cousin when he was nine years old, and having sexually abused several younger relatives. Andrae was arrested under Penal Code sections 288, subdivision (a), and 261.5, subdivision (c). He was placed in a new foster placement under dual supervision by DCFS and the probation department.

In March 2012, Andrae and DCFS entered into a "Transitional Independent Living Plan & Agreement." On September 13, 2013, Andrae signed a further "Transitional Independent Living Plan & Agreement," which identified educational, career, and personal goals. Subsequently, DCFS submitted a request for independent living services on Andrae's behalf, including vocational skills center classes, life skills training classes, transitional housing, and transitional health care coverage (Medi-Cal).

Andrae was placed with his paternal grandmother in May 2013, his twelfth placement since 2007. On October 1, 2013, Andrae contacted his grandmother and said he was leaving the state and would not be returning home. Andrae refused to disclose his whereabouts to his grandmother or his children's social worker (CSW).

As of April 24, 2014, Andrae's whereabouts were still unknown. An April 24 status review report said DCFS would assist Andrae with transitional housing when he returned home, and it noted that Andrae would need to continue in school to be eligible for continuing services after his 18th birthday.

## II.

### Arrest and Adjudication

In April 2014, Andrae, then 17 years old, was located in Phoenix, Arizona, where he had been arrested for trespassing. Prior to his arrest, he had been living with his girlfriend and their twin sons; his girlfriend was four months pregnant with their third child. Andrae was extradited to California in connection with an outstanding arrest warrant.

3

In June 2014, Andrae told his CSW he was not interested in participating in continued foster care services and wanted his dependency case closed.

In July 2014, Andrae was adjudicated to have violated Penal Code section 288.[3] In August 2014, he was ordered to serve a period of confinement with the DJJ in Stockton, California.

## III.

## Termination of Dependency Jurisdiction After

## Andrae's 18th Birthday

Andrae turned 18 years old in November 2014.  In early December 2014, DCFS recommended terminating its dependency jurisdiction over him.

On December 8, 2014, Andrae's counsel told the court that Andrae wanted his case to remain open, and she urged that he was eligible for A.B. 12 services notwithstanding his confinement with the DJJ.  The court continued the matter to January 2015.

In a January 26, 2015 interim review report, DCFS reported that a CSW had spoken to Andrae by telephone on January 23.  Andrae confirmed he had received:  (1) a letter informing him of the January 26 hearing to terminate dependency jurisdiction, his right to receive his juvenile case file, his right to reinstate jurisdiction to receive DCFS services until age 21, his eligibility for a Transitional Independent Living Program and Medi-Cal, and instructions on how to receive a new birth certificate or social security card; (2) his birth certificate; (3) his social security card; (4) information about how to obtain copies of birth records; (5) an application for a certified copy of birth records; (6) an advance health care directive; (7) a form JV-464-INFO ("How to Ask to Return to

---

**3**    Penal Code section 288 provides:  "(a) Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

4

Juvenile Court Jurisdiction and Foster Care"); (8) a blank JV-464 form; (9) proof of dependency; and (10) his Health and Education Passport. Andrae also told the CSW that he had signed the JV-385 "Termination of Juvenile Court Jurisdiction" form. His case manager confirmed that Andrae had signed the form.

At the January 26, 2015 hearing, Andrae's counsel objected to the termination of dependency jurisdiction. The court said that in light of Andrae's commitment to the DJJ, it believed terminating jurisdiction was appropriate, noting as follows:

"I am going to terminate. I think it's the appropriate thing to do. . . . I don't think he's eligible. I don't think he's in a T.I.L.P. [transitional independent living plan]. I don't think he's actively participating in A.B. 12 because of the fact that he is incarcerated and he is in the C.Y.A. [California Youth Authority] or the Youth Authority. It's still available to him when he finishes. [¶] I don't know how old he's going to be when he comes out of there. I wish I knew that, but I don't see that anywhere. . . . [A]nd he can always ask the court to reinstate jurisdiction, and I will be happy to do that when that opportunity arises.

"The court now makes the following findings: The court finds that conditions which would justify the initial assumption of jurisdiction under section 300 no longer exist, are not likely to exist if supervision is withdrawn. Continued supervision of the non-minor dependent is no longer necessary. Jurisdiction of the court is terminated with the right, of course, of the non-minor dependent to have the court's jurisdiction reinstated in the future, provided he hasn't attained the age of 21."

**DISCUSSION**

Andrae contends: (1) The juvenile court erred in terminating its dependency jurisdiction over him and failing to provide him with benefits under A.B. 12; (2) DCFS's reports were inadequate to meet the requirements of section 391; and (3) the juvenile court failed to make orders maintaining "general jurisdiction."

We review the juvenile court's orders for abuse of discretion. (*In re Aaron S.* (2015) 235 Cal.App.4th 507, 517.) As we now explain, there was no abuse of discretion.

5

# I.

## The Juvenile Court Did Not Err in Terminating Its
## Dependency Jurisdiction Over Andrae

A.       *Statutory Overview*

Before 2008, most dependent children "emancipated" from—i.e., became ineligible for—foster care on their 18th birthday.  In 2008, in order to improve outcomes for children who aged out of foster care, Congress passed the Fostering Connections to Success and Increasing Adoptions Act of 2008 (P.L. 110-351).  Among other things, the 2008 act provided federal funding to reimburse states for part of the cost of providing maintenance payments to eligible youths who remained in foster care after their 18th birthdays, so long as those youths had not yet reached their 21st birthdays and were either enrolled in school, employed at least 80 hours a month, or participating in "an activity designed to promote or remove barriers to employment."  (Congressional Research Service, "Child Welfare:  The Fostering Connections to Success and Increasing Adoptions Act of 2008 (P.L. 110-351)," Oct. 9, 2008, p. 9.)

In 2010, in order to take advantage of expanded federal foster care funding, California passed A.B. 12.  As relevant here, A.B. 12 permits a juvenile court to continue to exercise dependency jurisdiction and provide foster care benefits (also known as AFDC-FC benefits) to eligible nonminors until the age of 21.

B.       *Andrae Is Not Currently Eligible for A.B. 12 Benefits*

Andrae contends that he remained eligible for A.B. 12 benefits even during his commitment to the DJJ, and that the juvenile court therefore abused its discretion by terminating its dependency jurisdiction over him.  For the reasons that follow, we do not agree.

To determine a youth's eligibility for continuing dependency jurisdiction and A.B. 12 benefits after the youth's 18th birthday, the juvenile court is required to conduct a hearing under section 391.  Section 391 provides that the court "shall continue" dependency jurisdiction over (and order continuing benefits for) a nonminor *if* he or she "meets the definition of a nonminor dependent as described in subdivision (v) of Section

6

11400," *unless* the court finds that the nonminor "does not wish to remain subject to dependency jurisdiction" *or* "is not participating in a reasonable and appropriate transitional independent living case plan."  (§ 391, subd. (c)(1).)

Thus, under section 391, to be eligible for A.B. 12 benefits after age 18, a youth must meet three preliminary criteria:

(1)  be a "nonminor dependent" within the terms of section 11400, subdivision (v),

(2)  "wish to remain subject to dependency jurisdiction," and

(3)  "participat[e] in a reasonable and appropriate transitional independent living case plan."

As we now discuss, Andrae did not meet any of these three criteria.  The juvenile court therefore did not abuse its discretion in finding him ineligible for A.B. 12 benefits.

### 1.    Andrae Is Not a "Nonminor Dependent"

A "nonminor dependent" within the meaning of section 11400, subdivision (v), is a youth who, among other things, is "*in foster care* under the placement and care responsibility of the county welfare department, county probation department, Indian tribe, consortium of tribes, or tribal organization."  (§ 11400, subd. (v)(2), italics added.)

To be "*in foster care*" within the meaning of the statute, a nonminor must be placed in one of the following:

(1)    An approved or licensed home (of a relative, nonrelative, nonrelative extended family member, resource family, or nonrelated legal guardian), or an "exclusive-use home" (§ 11402, subds. (a), (b)(1) & (2), (c), (e), (f));

(2)    A "licensed group home," "out-of-state group home," or transitional housing (*id.*, subds. (d), (g), (h)); or

(3)    "An approved supervised independent living setting for nonminor dependents, as defined in subdivision (w) of Section 11400" (*id.*, subd. (i)).

A juvenile detention facility is, on its face, not a "home" or "group home," within the meaning of section 11402, subdivisions (a) through (h).  It also is not an "approved supervised independent living setting for nonminor dependents," within the meaning of section 11402, subdivision (i).  Section 11400, subdivision (w) defines a "supervised

7

independent living placement" as "an independent supervised setting . . . in which the youth is living independently, pursuant to Section 472(c)(2) of the Social Security Act (42 U.S.C. Sec. 672(c)(2))." Under 42 United States Code section 672(c), an independent supervised setting "*shall not include* detention facilities, forestry camps, training schools, or any other facility operated primarily for the detention of children who are determined to be delinquent." (Italics added.) Accordingly, because Andrae is presently committed to the DJJ, he is not "in foster care;" he thus does not meet the statutory definition of a nonminor dependent.

### 2. The Juvenile Court Reasonably Concluded That Andrae Did Not Wish to Remain Subject to Dependency Jurisdiction

To be eligible for A.B. 12 benefits after age 18, a youth must "wish to remain subject to dependency jurisdiction." (§ 391, subd. (c)(1)(A).) Here, Andrae told his CSW in June 2014 that he was not interested in participating in continued foster care and wanted his dependency case closed. At the December 8, 2014 hearing, Andrae's counsel told the court that Andrae wanted his dependency case to remain open, but the following month, Andrae signed a JV-385 "Termination of Juvenile Court Jurisdiction" form. Accordingly, the juvenile court did not abuse its discretion by concluding that Andrae did "not wish to remain subject to dependency jurisdiction" within the meaning of section 391, subdivision (c)(1)(A).

### 3. Andrae Was Not Participating in a Transitional Independent Living Case Plan

To be eligible for A.B. 12 benefits, a youth must "participat[e] in a reasonable and appropriate transitional independent living case plan." (§ 391, subd. (c)(1)(B).) A "transitional independent living case plan" is "the roadmap for the nonminor's transition to self-sufficiency" (*In re Nadia G.* (2013) 216 Cal.App.4th 1110, 1119), which describes "the nonminor's permanent plan for transition to living independently" and "how the nonminor will make progress in the transition to living independently and assume incremental responsibility for adult decisionmaking." (§ 11400, subd. (y)).

8

Because Andrae was committed to a juvenile detention facility, he was in no sense "participat[ing]" in a "transition to living independently." (§§ 391, subd. (c)(1)(B), 11400, subd. (y).) To the contrary, he was in a locked detention facility where he had considerably less freedom than was available to him as a dependent minor in foster care. The juvenile court did not err in so concluding. (See *In re Aaron S.*, *supra*, 235 Cal.App.4th at p. 519 [juvenile court reasonably concluded that nonminor "was not *participating* in an independent living program"].)

## II.
## DCFS's December 2014 and January 2015 Reports
## Met the Requirements of Section 391

A.    *Compliance With Section 391, Subdivision (e)*

Section 391, subdivision (e) provides that the juvenile court "shall not" terminate dependency jurisdiction over a nonminor after he or she has turned age 18 "until a hearing is conducted pursuant to this section and the department has submitted a report verifying that the following information, documents, and services have been provided to the nonminor":

(1)    Written information concerning the nonminor's case;

(2)    The nonminor's social security card, birth certificate, health and education summary, driver's license or identification card, parents' death certificates (if applicable), proof of citizenship or legal residence, advance health care directive form, Judicial Counsel form to petition for reinstatement of dependency jurisdiction, and the written 90-day transition plan prepared pursuant to section 16501.1;

(3)    Assistance in completing an application for Medi-Cal or in obtaining other health insurance;

(4)    Referrals to transitional housing, or assistance in obtaining other housing;

(5)    Assistance in obtaining employment or other financial support;

(6)    Assistance in applying for admission to college or another educational institution and in obtaining financial aid;

9

(7)     Assistance in maintaining relationships with individuals who are important to the nonminor;

(8)     Assistance in accessing the Independent Living Aftercare Program; and

(9)     Written information regarding student assistance or internship preferences. (§ 391, subd. (e).)

Andrae concedes that he received most of the documents and information required by this section, but he urges that his dependency jurisdiction should not have been terminated because DCFS did not provide him with information about Medi-Cal eligibility, housing, or post-secondary education.  Any error in this regard was harmless. During his detention by the DJJ, which will last at least 18 months and perhaps considerably longer, Andrae's health care and housing will be provided for him by the California Department of Corrections and Rehabilitation (CDCR).  Accordingly, DCFS's alleged failure to provide him with information did not affect his ability to access these services.  We conclude similarly with regard to information about postsecondary education:  During his detention, any educational opportunities will, of necessity, be provided through the CDCR, and thus DCFS's alleged failure to provide Andrae with information about postsecondary education will not affect his access to it.  (See *In re Aaron S.*, *supra*, 235 Cal.App.4th at p. 521 [applying harmless error standard to termination of dependency jurisdiction under section 391].)

*B.     Compliance With Section 391, Subdivision (b)*

Section 391, subdivision (b) provides that prior to any hearing at which the court is considering terminating jurisdiction over a nonminor, the child welfare department (i.e., DCFS) shall submit a report that *either*:

(1)     Recommends a transitional independent living case plan and continuing jurisdiction for the nonminor; *or*

(2)     If the department recommends termination of the court's dependency jurisdiction, submits documentation of the reasonable efforts made by the department to provide the nonminor "with the assistance needed to meet or maintain eligibility as a

10

nonminor dependent, as defined in paragraphs (1) to (5), inclusive, of subdivision (b) of Section 11403"; *or*

(3) If the nonminor has indicated that he or she does not want dependency jurisdiction to continue, describes "the manner in which the nonminor was advised of his or her options, including the benefits of remaining in foster care, and of his or her right to reenter foster care and to file a petition pursuant to subdivision (e) of Section 388 to resume dependency jurisdiction prior to attaining 21 years of age." (§ 391, subd. (b)(2)-(4).)

Andrae contends that DCFS did not comply with section 391, subdivision (b) because his CSW did not advise him of the benefits "of continuing jurisdiction or claiming benefits under AB-12." Nothing required DCFS to advise him of such benefits, however. Instead, because Andrae indicated he did not want dependency jurisdiction to continue, section 391, subdivision (b)(4) required DCFS to advise Andrae "of *his . . . options*." (Italics added.) Because Andrae was in juvenile detention, as we have said, he did not have the option of remaining in foster care, and thus DCFS was not required to discuss foster care with him. DCFS *was* required to advise Andrae of his right to reenter foster care if he were released from the DJJ prior to his 21st birthday, and it did so: In a January 13, 2015 letter to Andrae, CSW Dorian Truong advised that "you can call the Child Protection Hotline to reinstate jurisdiction at telephone number (800) 540-4000 until you reach the age of 21." CSW Truong also attached to the letter JV-464-INFO, "How to Ask to Return to Juvenile Court Jurisdiction and Foster Care," which described the benefits of returning to foster care, the prerequisites for returning to foster care, and how to ask the juvenile court to reinstate foster care, as well as a blank JV-464 form. We conclude that this was sufficient to satisfy the requirements of section 391, subdivision (b)(3).

11

### III.
### The Juvenile Court Did Not Fail to Make Orders Maintaining
### "General Jurisdiction" Over Andrae

Section 303, subdivision (b) provides: "The court may terminate its dependency, delinquency, or transition jurisdiction over the nonminor dependent between the time the nonminor reaches the age of majority and 21 years of age. If the court terminates dependency, delinquency, or transition jurisdiction, the nonminor dependent shall remain under the general jurisdiction of the court in order to allow for a petition under subdivision (e) of Section 388."

Andrae contends that the juvenile court failed to make orders retaining "general jurisdiction" over him pursuant to this section. We do not agree. Nothing in this section requires that the court make a specific order of general jurisdiction over a nonminor exiting the dependency system. Rather, consistent with the plain language of section 303, subdivision (b), such jurisdiction exists *by operation of law* until the nonminor's 21st birthday. The juvenile court's order therefore did not violate section 303, subdivision (b).

### DISPOSITION

The January 26, 2015 order terminating dependency jurisdiction over Andrae is affirmed.

EDMON, P. J.

We concur:

LAVIN, J.                                              JONES, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANDRE A., a Person Coming Under the Juvenile Court Law. | B262556 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK71038) |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | [NO CHANGE IN JUDGMENT] |
| ANDRAE A., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-referenced matter filed September 15, 2015, was not certified for publication in the Official Reports. For good cause shown it now appears that the opinion should be published in the Official Reports.

[There is no change in the judgment.]

_____

EDMON, P. J.                    LAVIN, J.                    JONES, J. *

_____

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.