Filed 8/20/20  T.T. v. Cal. Dept. of Social Services CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| T.T.,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF SOCIAL SERVICES et al.,<br><br>        Defendants and Respondents. | B293236<br>(Los Angeles County<br>Super. Ct. No. BS170558) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed.

Latham & Watkins, Winston Stromberg, Harrison White, Jared Forbus, Michael Galdes, Michelle Cornell-Davis; Alliance for Children's Rights, Adam S. Cherensky and Jennifer L. Baum for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Cheryl Feiner, Assistant Attorney General, Richard T. Waldow, Gregory D. Brown and Gregory M. Cribbs, Deputy Attorneys General, for Defendants and Respondents.

Just before T.T. turned 18 years old, the Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300.[1]  After T.T. turned 18 years old, the juvenile court dismissed the petition without finding that she was a dependent of the court, which finding is a prerequisite for eligibility for extended foster care benefits.  Based on claims that the negligence of the California Department of Social Services and its director Will Lightbourne (collectively the county) caused her ineligibility for those benefits, T.T. filed a petition for a writ of mandate to compel the county to pay benefits to her retroactively.  The trial court denied the petition, and T.T. appeals.  We affirm the judgment.[2]

## BACKGROUND

I.      T.T.'s history

In June 2006, DCFS filed a petition alleging that T.T. and her siblings were persons described under section 300.  T.T. was then 13 years old.  Based on a finding that substantial danger existed to the children's physical or emotional health, the juvenile court detained them and vested temporary placement and custody with DCFS.  However, their mother fled with T.T. and her siblings.  According to T.T., her mother abused and kept them housebound for the next four years.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] T.T.'s unopposed motion to seal her opening brief (filed on June 27, 2019) and the unopposed motion to seal the administrative record (lodged May 24, 2019) are granted.

Based on information from the children's aunt and even though the children's whereabouts remained unknown, DCFS filed another petition on May 9, 2011. After again making a prima facie finding that the children, including T.T., were persons described by section 300, the juvenile court vested temporary placement and custody with DCFS, ordered the children detained, and issued protective custody warrants. Later that month, the juvenile court issued an arrest warrant for mother and ordered the children detained in shelter care, even though they remained at large.

When the children's grandmother alerted DCFS that mother had left the children with her, DCFS finally took physical custody of them on March 6, 2012 and placed them in temporary foster care. T.T. was then just 21 days from turning 18 years old.

T.T. appeared in court with counsel on March 13, 2012. The juvenile court directed DCFS to prepare a preadjudication social study by May 2, 2012. The juvenile court noted that T.T. remained detained in shelter care. Among other things, the juvenile court set a contested adjudication hearing for May 24, 2012, which was later continued.[3]

The next minute order in the record is dated June 13, 2012. Even though the record does not show there was an adjudication hearing, that minute order states, T.T. "remains a dependent child of the court under [section] 300 [subdivisions (a), (b), and (g)]." At the next court date, June 15, 2012, the juvenile court released T.T. and four of her younger siblings to their parents,

_____

[3] The administrative law judge was given a copy of the May 24, 2012 minute order, which he said showed that the hearing had been continued. The record does not contain a minute order dated May 24, 2012.

3

dismissing the petition without prejudice for "INFORMAL SUPERVISION—DEPENDENCY."

II.    Administrative law judge's decision

Three years later, in August 2015, T.T. asked for an administrative hearing to obtain retroactive extended foster care benefits.[4]  In support of her request, T.T. submitted a declaration stating that after DCFS took physical custody of her but before her 18th birthday, she signed papers that a social worker told her would enable her to stay in the system.  After her 18th birthday, T.T. went to court once, at which time she learned she had been "dropped from the system."  A social worker advised T.T. to call a hotline.  T.T. also contacted her social worker's supervisor.

After a hearing, the administrative law judge denied T.T.'s request.

III.    T.T.'s petition for writ of mandate

T.T. then petitioned for a writ of mandate under Code of Civil Procedure sections 1085 and 1094.5 to compel the county to pay her extended foster care benefits for the period of March 27, 2012 to March 26, 2015.  Exercising its independent judgment, the trial court denied the petition, finding that T.T. did not qualify for extended foster care benefits because she had never been adjudicated a dependent of the court.  Further, the trial court found that equitable estoppel did not apply because there was no evidence T.T. relied on the county's assertions to her detriment.

---

[4] T.T. was living at a temporary boarding care facility at the time.

# DISCUSSION

## I.     Standard of review

Where an administrative decision involves or substantially affects a fundamental vested right, the trial court exercises its independent judgment.  (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1056–1057.)  The trial court examines the administrative record for errors of law and exercises its independent judgment upon the evidence disclosed in a limited trial de novo.  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143.)  On appeal, we review whether substantial evidence supports the trial court's judgment.  (*Id.* at p. 143 & fn. 10.)

## II.     T.T. was never adjudged a dependent of the court

Before 2008, dependent children became ineligible for foster care benefits when they turned 18 years old.  (*In re A.A.* (2016) 243 Cal.App.4th 765, 772.)  To improve outcomes for children who aged out of foster care, Congress passed legislation that included federal funding to states providing funding to eligible youths who remained in the system after turning 18 years old. (*Ibid.*)  California in turn passed Assembly Bill No. 12 which permits a juvenile court to maintain dependency jurisdiction and to provide foster care benefits to eligible nonminors until the age of 21.  (*A.A.*, at p. 773.)  To qualify for extended foster care benefits, a child must have been adjudged a dependent of the court on the ground the child is a person described by section 300.  (§ 11401, subd. (b)(1).)

T.T. concedes that the juvenile court never adjudged her to be a dependent of the court.  She nonetheless argues that she is entitled to extended foster care benefits, because, first, the

5

juvenile court retained jurisdiction over her, and, second, the county's negligence caused her to be ineligible for extended foster care benefits.

A. *The juvenile court did not retain jurisdiction over T.T.*

T.T. argues that the trial court committed legal error by misinterpreting the juvenile court's final June 15, 2012 minute order as one dismissing the petition rather than one finding her to be a person described by section 300 and retaining jurisdiction over her. T.T., however, did not make this argument before the administrative law judge or the trial court. Her failure to do so forfeits the issue on appeal. (See *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1325.)

In any event, the limited record before us does not support T.T.'s reading of the final minute order. True, the minute order is unclear. It states that the juvenile court dismissed the petition and released T.T. and four of her younger siblings to their parents. However, the minute order also states that the petition was dismissed without prejudice for informal supervision— dependency. Based on the reference to informal supervision, T.T. argues that the trial court must have found she was a person described by section 300 and retained jurisdiction over her.

We cannot agree. As we have noted, to be eligible for extended foster care benefits, a child must be adjudged a dependent of the juvenile court on the grounds the child is a person described by section 300. (§ 11401, subd. (b)(1).) If the juvenile court finds that the child is *not* such a person, then the juvenile court shall dismiss the petition and discharge the child from any detention or restriction theretofore ordered. (§ 356.) But if the juvenile court "finds that the child is a person described by [s]ection 300, it may, *without adjudicating the child a*

6

*dependent child of the court*, order that services be provided to keep the family together and place the child and child's parent or guardian under the supervision of the social worker" (§ 360, subd. (b), italics added), i.e., informal supervision.  If the juvenile court " 'agrees to or orders a program of informal supervision, it *does not dismiss the dependency petition* or otherwise set it aside. The true finding of jurisdiction remains.  *It is only the dispositional alternative of declaring the child a dependent that is not made.*' "  (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260, italics added.)

Because the minute order here references informal supervision, T.T. suggests there must have been a concomitant jurisdictional finding she was a person described by section 300, and therefore the juvenile court retained jurisdiction over her and did not dismiss the petition.  However, any ambiguity in the minute order does not help T.T.  Dependency minute orders are often fraught with clerical errors, especially where, as here, multiple children are involved.  T.T. was the oldest of six children named in the petition.  As T.T. was no longer a minor at the June 15, 2012 hearing, the informal supervision language could have referred to her younger siblings.  Or it could be that the juvenile court misunderstood that informal supervision requires jurisdictional findings.  In whatever way that minute order can be interpreted, it cannot be interpreted as declaring T.T. a dependent of the court.  And because of her age, the petition had to be dismissed as to T.T. in the absence of orders sustaining allegations in the petition on which jurisdiction could be based.

No such findings are in the record.[5]  The reporter's transcript from the June 15, 2012 hearing and the report submitted for that hearing might have clarified any ambiguities.  But they were not part of the record in the trial court.[6]  Therefore, we cannot find as a matter of law that the trial court misinterpreted the June 15, 2012 minute order.

    B.    *The county's alleged breach of duties owed to T.T.*

Next, T.T. contends that the county's negligence prevented her from being adjudged a dependent of the court.  She thus argues that the county breached two duties owed to her.

First, the county failed to prosecute the case in a timely manner.  T.T. points out that a petition under the Welfare and Institutions Code was filed in 2006 but never adjudicated because mother absconded with her.  A second petition was filed in 2011, but T.T. was not taken into DCFS's physical custody until March 2012.  By this time, T.T. was just weeks from turning 18 years old.  Yet her case was not heard in a timely manner, as the juvenile court set the date for the preadjudication report and the adjudication hearing for after T.T.'s 18th birthday.  Based on these bare facts, T.T. argues that the county failed to expedite

---

[5] There is a reference in the June 13, 2012 minute order that T.T. and her siblings were dependents.  However, the record does not contain adjudicatory findings and T.T. agrees she was never adjudged a dependent of the court.

[6] The administrative law judge asked the county to get reporter's transcripts.  The county did not obtain them in time for the administrative hearing.  Nonetheless, the administrative law judge found that the county took the necessary steps to obtain them.  The county could not locate other records regarding T.T.

her case and to have it heard in a timely manner. Even if we determined that T.T.'s case was not heard in a timely manner, we could not connect these alleged breaches to the juvenile court's failure to adjudicate T.T. a dependent of the court. Rather, the record contains the March 13, 2012 minute order in which the juvenile court continued the contested adjudication hearing to June 2012, additional minute orders, and social worker service logs. But the record does not contain the petitions, preadjudication report, or reporters' transcripts of hearings in the juvenile court. The record is therefore insufficient to determine the reasons for the juvenile court's orders and whether, for example, the county requested any continuances or somehow impeded the court's progress, as T.T. suggests.

In any event, it is the juvenile court, not DCFS or the county, that ultimately controls dependency proceedings. (§ 350, subd. (a)(1).) Thus, although T.T. refers to DCFS policy requiring social workers to make reasonable efforts to ensure that children are given appropriate tools to maintain their eligibility, whether to declare T.T. a dependent was not a matter within the county's control. Instead it's a matter ultimately for the juvenile court to decide. Therefore, even if T.T. filled out the pertinent forms to extend her eligibility for foster care benefits (which T.T. declared she did), they would have been rendered irrelevant because the juvenile court decision did not adjudge T.T. a dependent.

The second alleged breach that T.T. raises is that the county failed to apprise the juvenile court of critical facts: that she was living with foster parents instead of her mother and that T.T. would soon turn 18 years old. Although it is hard to fathom how these facts could have been concealed from the juvenile court, the limited record also makes it impossible to ascertain

9

whether the juvenile court was unaware of or somehow misled about them. Indeed it seems unlikely in the extreme that the juvenile court was unaware of these facts. T.T.'s age was hardly a secret, since her date of birth is in the minute orders. The record therefore suggests that the juvenile court knew that T.T. was about to age out of the system and nonetheless declined to expedite the matter and declare her a dependent. T.T. was represented by counsel during the dependency proceedings. Although it is reasonable to infer that counsel knew his client's age and its legal implications, the record does not show what counsel and the juvenile court made of this fact. As to T.T.'s placement, she argues that the trial court forgot she was in temporary foster care based on a misstatement in the June 15, 2012 minute order that she remained released to mother. We do not adopt T.T.'s conclusion from what may be a clerical error that the juvenile court was ignorant of T.T.'s actual placement. Further, we are aware of T.T.'s allegation that her mother kidnapped and severely abused her. But we have no indication that the juvenile court was ignorant of this charge.

III.    Equitable estoppel

T.T. alternatively contends that the county is equitably estopped from denying her extended foster care benefits. For reasons similar to those expressed above, we cannot agree.

Whenever a party has intentionally led another to believe a thing true and to act upon such belief, the party is not, in any litigation arising out of such statement or conduct, permitted to contradict it. (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.) The elements of equitable estoppel are "(1) the party to be estopped must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon,

10

or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his [or her] injury." (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.) The detrimental reliance must be reasonable. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35.) Also, equitable estoppel ordinarily does not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy. (*Steinhart*, at p. 1315.)

In reference to the elements of equitable estoppel, T.T. argues that, first, the county knew of its legal obligation to help her get extended foster care benefits; second, the county intended T.T. to act on its representations that it would secure benefits for her; third, the county led T.T. to believe she would get the benefits; fourth, T.T. suffered detriment, as she did not get the extended foster care benefits; and, finally, awarding T.T. extended foster care benefits is in the interest of justice.

The trial court here found equitable estoppel to be inapplicable because T.T. failed to establish the fourth element of detrimental reliance. We agree. Whether the county led T.T. to believe it would secure the benefits for her, the record does not show that the county did something to cause T.T. not to be adjudged a dependent of the court. Stated otherwise, the record does not show that T.T.'s reliance on any of the county's statements or conduct caused her the detriment of which she complains.

Finally, based on this limited record, we cannot conclude that, as compelling as T.T.'s case may appear, public policy requires reversing the judgment.[7]

## DISPOSITION

The judgment is affirmed.  No costs are awarded on appeal. NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


LAVIN, Acting P. J.


EGERTON, J.

---

[7] Although we cannot ascertain why the juvenile court continued critical hearings, this case serves as a reminder that a juvenile court should do so only after seriously considering the timing of the procedures and the consequences of a continuance. Trial courts should manage their cases in ways that protect the most vulnerable among us and that meet children's reasonable expectations that they can actually depend on the dependency system.