Filed 9/30/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| In re R.G., a Person Coming Under the Juvenile Court Law. | |
|---|---|
| CONTRA COSTA CHILDREN AND FAMILY SERVICES BUREAU, Plaintiff and Respondent, v. R.G., Defendant and Appellant. | A144684 (Contra Costa County Super. Ct. No. J01-00658) |

Appellant R.G., a nonminor dependent within the transition jurisdiction of the juvenile court (Welf. & Inst. Code, § 450),[1] appeals after the juvenile court found that he was ineligible for extended foster care support payments between January 13 and March 13, 2015, because he was neither employed at least 20 hours per week nor participating in a program or activity that promoted or removed barriers to employment, as is required to receive financial support pursuant to section subdivisions (b)(4) and (b)(3) of section 11403. Section 11403 is part of the statutory scheme contained in the California Fostering Connections to Success Act (the Act; also known as AB 12), under which certain youth in foster care may continue receiving financial assistance after turning 18. (Assem. Bill No. 12 (2009-2010 Reg. Sess.); Assem. Bill No. 212 (2011-2012 Reg. Sess.).) Appellant contends the court erred when it found that his documented efforts to

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

obtain employment did not constitute compliance with the requirements of section 11403, subdivision (b)(3).  We agree with appellant that the court's findings and order were based on a misinterpretation of the governing statute and that reversal is therefore required.

## I. *Legal Background*

In *In re K.L.* (2012) 210 Cal.App.4th 632, 637-638, the appellate court summarized the origins and various pertinent provisions of the Act, which provide a useful background to the issue raised in this appeal:

"Before 2008, youths in the foster care system aged out of the system when they turned 18, leading to an epidemic of emancipated youths without the skills and resources to become productive members of society.  [Citation.]  In 2008, the federal government enacted the Fostering Connections to Success and Increasing Adoptions Act (the Federal Act), which allowed youths in foster care to continue receiving assistance payments after they turned 18.  [Citation.]  The Federal Act requires that states implementing its programs provide assistance and support in developing a personalized transition plan for all youths before they age out of foster care.  [Citation.]

"Effective January 1, 2012, California enacted the Act, which extended the California foster care program to age 21 in accordance with the provisions of the Federal Act.  [Citation.]  Before the effective date of the Act, a juvenile court could maintain dependency jurisdiction over a child who had reached the age of majority, but had not yet reached the age of 21 years.  (§ 303, subd. (a).)  After the effective date of the Act, 'the court shall have within its jurisdiction any nonminor dependent, as defined in subdivision (v) of Section 11400.'  (§ 303, subd. (b).)  Thus, dependent children who would normally ' "age out" of the system' could qualify to receive assistance until they reach 19, 20, or potentially even 21 years of age.  [Citation.]

"A nonminor dependent is defined as 'a foster child . . . who is a current dependent child or ward of the juvenile court . . . who satisfies all of the following criteria:  [¶] (1)  He or she has attained 18 years of age while under an order of foster care placement by the juvenile court, and is not more than 19 years of age on or after January

1, 2012 . . . . [¶] (2) He or she is in foster care under the placement and care responsibility of the county welfare department . . . . [¶] (3) He or she is participating in a transitional independent living case plan . . . as described in Section 11403.' (§ 11400, subd. (v).)

"A transitional independent living case plan is defined as 'the nonminor dependent's case plan, updated every six months, that describes the goals and objectives of how the nonminor will make progress in the transition to living independently and assume incremental responsibility for adult decisionmaking, the collaborative efforts between the nonminor and the social worker . . . and the supportive services as described in the transitional independent living plan (TILP) to ensure active and meaningful participation in one or more of the eligibility criteria described in subdivision (b) of Section 11403, the nonminor's appropriate supervised placement setting, and the nonminor's permanent plan for transition to living independently, which includes maintaining or obtaining permanent connections to caring and committed adults, as set forth in paragraph (16) of subdivision (f) of Section 16501.1.' (§ 11400, subd. (y).)

"A nonminor dependent who satisfies at least one of the five conditions listed in subdivision (b) of section 11403[,] becomes eligible to receive financial support consistent with their transitional independent living case plan until [he or she] reach[es] 19, 20, or potentially even 21 years of age. (§ 11403, subd. (a).) These conditions are '(1) The nonminor is completing secondary education or a program leading to an equivalent credential. [¶] (2) The nonminor is enrolled in an institution which provides postsecondary or vocational education. [¶] (3) The nonminor is participating in a program or activity designed to promote, or remove barriers to employment. [¶] (4) The nonminor is employed for at least 80 hours per month. [¶] (5) The nonminor is incapable of doing any of the activities described in subparagraphs (1) to (4), inclusive, due to a medical condition . . . .' (§ 11403, subd. (b).)"

## II. *Factual Background*

According to an August 1, 2014 report by appellant's court appointed special advocate (CASA) and a nonminor dependent status review report filed by his social

3

worker on that same date, appellant was born in 1996 and became a dependent of the juvenile court in 2001, under the supervision of the Contra Costa County Children and Family Services Bureau (Bureau). He was removed from his parents' custody and had numerous foster care placements over the years. In 2012, appellant was arrested for the theft of an iPhone from a classmate and placed on probation for three years under a deferred entry of judgment program. In 2013, he was placed in a residential substance abuse treatment facility due to issues with marijuana that were affecting his school performance. He successfully completed the treatment program and earned his high school diploma.

Appellant turned 18 in 2014, and elected to remain in extended foster care. He was placed in a supervised independent living placement in the home of his former foster parents. In July 2014, appellant and his social worker formulated his Transitional Independent Living Plan (TILP). He was enrolled full time at Solano Community College and working part-time. He was also complying with the terms of his probation.

The social worker reported that appellant seemed committed to remaining substance free and gaining the life skills he needed to successfully transition to adulthood. The social worker believed it was in appellant's best interest to remain in extended foster care and therefore recommended that the juvenile court continue his nonminor dependency status.

At the August 1, 2014 status review hearing, the juvenile court found appellant to be in compliance with his TILP goals and continued his nonminor dependent status. The court's order stated that it was "anticipated" that appellant would continue to attend college and be employed at least 80 hours a month.

In a status review report prepared on January 16, 2015, the social worker reported that, since the last review hearing, appellant had "relocated twice, and he [was] in the process of regaining his stability and re-formulating his goals and life plans." In November 2014, upon his successful completion of his probation, appellant had left his supervised independent living placement and moved to Anaheim, where he was living with his girlfriend and her parents. In December 2014, appellant informed the social

4

worker that he, his girlfriend, and his girlfriend's two young sons were now living in South Sacramento, where he was actively looking for employment. In January 2015, the social worker met with appellant in Sacramento and approved his new living situation as a supervised independent living placement. She informed him of the need to furnish his attorney and the court with evidence of his job search efforts to maintain his nonminor dependency status.

Appellant and the social worker also formulated a new TILP for the period of January 13, 2015, to July 13, 2015, in which appellant agreed to a number of goals and activities, including the job related goal of finding and maintaining fulltime employment, with the related activities of applying for employment online daily, following up in one week, dressing appropriately for interviews, maintaining consistency, showing up for work on time, and performing tasks as assigned. The responsible parties for this goal included appellant, the social worker, and the Contra Costa Independent Living Skills Program specialist. Another goal was to maintain his status as a nonminor dependent, with activities that included maintaining and staying consistent with his job and meeting monthly with the social worker. The responsible parties for this goal were appellant and the social worker.

In a memorandum for the scheduled February 18, 2015 status review hearing, the social worker reported that appellant was unable to attend the hearing because he resided in Sacramento. He had, however, forwarded a letter from his new employer—WIS International—and documentation of $1,899.75 in income from his previous employment.

At the February 18, 2015 status review hearing regarding appellant's compliance with his TILP, appellant's attorney told the court that, after appellant moved to Sacramento in December 2014, he began an active search for employment, completing 20 to 30 applications and participating in several interviews. Counsel said that appellant had ultimately obtained fulltime employment with WIS International. He had not begun working yet, but was participating in an orientation for that job. Counsel offered to

provide the court with a verification letter from WIS International and a sampling of the online applications appellant had submitted.

The court stated that, since appellant had not worked a minimum of 20 hours per week or attended school during the previous six-month period, he was not in compliance with his TILP, pursuant to the relevant statute, section 11403, subdivision (b). Appellant's attorney responded that he believed appellant was in compliance when he was actively seeking employment, and the Bureau agreed. The court informed counsel that it would set a termination hearing in 30 days but, if counsel submitted proof of appellant's current employment once he actually began working, he could again begin receiving aid as a nonminor dependent.

In a memorandum prepared for the March 13, 2015 termination hearing, appellant's social worker reported that appellant would be starting his job at WIS International on March 6. The job required him to travel to various sites in and outside of California, to inventory merchandise. The social worker attached to the memorandum copies of numerous email job applications to and responses from prospective employers regarding online applications appellant had submitted between December 2014 and February 2015. The social worker also included a copy of appellant's resume and a letter to appellant from Patricia Ensley, the independent living skills program specialist, offering advice on improving his resume and job applications.

At the March 13, 2015 termination hearing, appellant's attorney informed the court that appellant had left the job at WIS International because it was not guaranteed shift work and had begun a full-time job working for a medical laundry service.

Appellant also testified at the hearing that he had begun working full-time on March 11, 2015, for Angelica Textiles, a company that cleans linens for hospitals. He further testified that, until late October 2014, he had been living with his foster parents, working, and going to school. He then decided to leave the program and sever all connections with the Bureau. Appellant had never received any AB 12 money himself; it had always gone to his foster placement. In January 2015, appellant contacted his social worker and told her he had decided to return to Northern California and wanted to reenter

6

the extended foster care program. The social worker approved his new home and he began searching for employment. In addition to sending email applications to prospective employers, appellant visited businesses, asked if they were hiring, and filled out applications.

At the conclusion of the termination hearing, counsel argued that appellant was eligible for extended foster care benefits, not only from the date he had obtained the job with Angelica Textiles, but also for the two months prior to the hearing because, under section 11403, subdivision (b)(3), "he was participating in an activity designed to promote or remove barriers to employment." The court disagreed, repeatedly referring to the fact that appellant had not been working at least 20 hours a week over the course of his nonminor dependency, which the court claimed precluded his eligibility for benefits. (See § 11403, subd (b)(4).) With respect to subdivision (b)(3) of section 11403, the court stated: "My clear reading of the statute is he's got to be employed, in school, or in a program that teaches you how to remove barriers or helps remove barriers," and that "[s]imply doing a bunch of online applications" is not enough.[2]

The court ordered that appellant be reinstated in the extended foster care program, but denied his request for retroactive benefits.

On March 25, 2015, appellant filed a notice of appeal.

---

[2] When appellant's counsel asked the court to admit into evidence documentation showing appellant's efforts in recent weeks to get trained and begin work at WIS International, the court responded that "[o]ur file is just a little too thick" and that it did not see the relevance of the documentation. Counsel responded that the documents were relevant to appellant's efforts to obtain employment and to his actually obtaining employment.

Counsel for the Bureau agreed that the documentation was relevant and should be admitted into evidence. She also acknowledged the efforts appellant had made and the integrity he had shown over the course of his nonminor dependency. She "applaud[ed]" appellant for the approach he had taken and told him to "keep up the good work." Finally, she stated that appellant was "not sitting down and not doing anything. He's hustling. And he's trying it's [*sic*] a tough market for anybody, especially an 18-year-old." The court then allowed the documentation to be admitted into evidence.

### III. *Legal Analysis*

Appellant contends the juvenile court's March 13, 2015 order must be reversed because the court incorrectly concluded that his documented efforts to obtain employment between January 13 (the start date of his most recent TILP) and March 13, 2015 (the date of the termination hearing), did not constitute compliance with the requirements of section 11403, subdivision (b)(3). As it did in the juvenile court, respondent agrees that the court erred and that its March 13 order must therefore be reversed.[3]

Because this appeal raises an issue of statutory interpretation based on undisputed facts, our standard of review is de novo. (*In re A.F.* (2013) 219 Cal.App.4th 51, 54; *In re M.C.* (2011) 199 Cal.App.4th 784, 804-805.)

The evidence in this case shows that, even before officially returning to the extended foster care program, appellant began searching for employment. After he and the social worker prepared his new TILP on January 13, 2015, appellant continued to actively pursue employment. Appellant testified regarding his endeavors at the termination hearing and submitted documentation showing the extent of his efforts, which the social worker also described in her reports. In addition, appellant had received support and feedback from his independent living skills program specialist about his resume and online job applications and had maintained regular contact with his social worker, as contemplated in his TILP. Indeed, the juvenile court expressed no doubt that appellant had made these efforts during the two months in question. Instead, the court denied appellant benefits for that time period because it believed subdivision (b)(3) of section 11403 required more than "[s]imply doing a bunch of online applications."

---

[3] In a "Declaration of Support for Appellant," filed at our request on September 4, 2015, respondent's counsel declared that her "client takes the position that [appellant] was eligible to receive AB 12 funding for the time in question and, therefore, the juvenile court judge erred by finding that [appellant] had not satisfied the criteria of . . . section 11403[, subdivision] (b)(3), and by denying [appellant] the AB 12 funding for that period."

(Compare *In re Aaron S.* (2015) 235 Cal.App.4th 507, 514, 518 [where nonminor dependent's minimal efforts included telling juvenile court that he had filled out 27 job applications since last hearing but had forgotten to bring work search log to hearing, court reasonably found that nonminor did not satisfy subdivision (b)(3) of section 11403]; *In re Nadia G.* (2013) 216 Cal.App.4th 1110, 1120 [in finding that nonminor dependent was not participating in her TILP, juvenile court was understandably skeptical of her enrollment in school a week before termination hearing, and court's credibility determinations were not subject to reweighing on appeal].)

The juvenile court's interpretation of section 11403, subdivision (b)(3), was far too narrow. That subdivision mandates financial support to a nonminor dependent who "is participating in a program or activity designed to promote, or remove barriers to employment." (§ 11403, subd. (b)(3).) There is nothing in this language that limits the nonminor to, as the court put it, "a program that teaches you how to remove barriers or helps remove barriers." Rather, it plainly contemplates participation in either an organized program *or* other activities that are designed to promote employment. (See *In re M.C.*, *supra*, 199 Cal.App.4th at p. 805 [to determine Legislature's intent, " 'courts turn first to the words [of statute] themselves, giving them their ordinary and generally accepted meaning' "].)

In addition, subdivision (i) of section 11403 states the requirement that the county social welfare department "define the six-month certification of the conditions of eligibility pursuant to subdivision (b) to be consistent with the flexibility provided by federal policy guidance, to ensure that there are ample supports for a nonminor to achieve the goals of his or her transition independent living case plan." (Cf. *In re A.F.*, *supra*, 219 Cal.App.4th at p. 58 [emphasizing, in context of related statute regarding nonminor former dependents, "the Legislature's underlying purpose of supporting former foster youth in their efforts to become independent adults"].)

This emphasis on flexibility and support for the nonminor's achievement of his or her goals is reflected in the California Department of Social Services' October 13, 2011 All County Letter No. 11-69 (ACL 11-69), the purpose of which was "to provide counties

9

with instructions regarding the policies and procedures for the Extended Foster Care . . . Program created by AB 12."[4] In the section entitled "Temporary breaks in participation," ACL 11-69 states: "It is likely there will be times when NMDs [nonminor dependents] will be in transition between participation activities during the six-month certification period. For example, a NMD may lose a job or have a medical crisis and have to quit school. These circumstances alone do not make NMDs ineligible. As long as the NMDs are still working toward their goals, as outlined in their Mutual Agreement and TILPs, a setback does not automatically disqualify them from the program.

"It is for these types of situations that the [*sic*] each TILP should include a back-up plan that is documented on SOC 161. Utilizing that option will allow NMDs to maintain continuous eligibility. For example, participation criteria number three, removing barriers to employment, is intended to bridge gaps in eligibility. Case managers are encouraged to select more than one criterion when working [with] the NMD to allow for such flexibility. . . ."

Attachment A to ACL 11-69, which discusses subdivision (b)(3) of section 11403, is particularly relevant to the issue raised in this case. There, the Department of Social Services explains: "A program or activity designed to promote, or remove barriers to employment is an individualized program based on a youth centered assessment of skills and needs. *These activities could be self-directed,* completed in conjunction with a nonminor dependent's caregiver or social worker, or part of an organized program. . . . [¶] . . . [¶] For a nonminor who is re-entering foster care after a break, the initial meeting with the social worker to select the participation activity satisfies the requirement of removing barriers to employment. However, the nonminor must begin participation in the activity within a reasonable amount of time after re-entry.

"Verification for this condition will vary depending on the activity that nonminor dependents are participating in. A certificate of completion for a class or training is

---

[4] On June 29, 2015, we granted appellant's unopposed request for judicial notice of this document.

sufficient for more formal or structured programs. *However, as this category is very broad, verification can also be as flexible as documentation in a case manager's notes when the NMD shows the case manager a revised resume or discusses the outcome of job searches and/or interviews.*" (Italics added.)

ACL 11-69 thus follows the Legislature's mandate to, "consistent with the flexibility provided by federal policy guidance, . . . ensure that there are ample supports for a nonminor to achieve the goals of his or her transition independent living case plan." (§ 11403, subd. (i); see *In re M.C.*, *supra*, 199 Cal.App.4th at p. 805.) It also further undermines the juvenile court's determination that appellant had to be enrolled in a formal program designed to remove barriers to employment.

The undisputed evidence in this case demonstrates that appellant's activities, which were primarily self-directed, included formulating a TILP that included a specific job search plan; applying online and in person to numerous jobs; following up with prospective employers; receiving feedback from an independent living skills program specialist on how to improve his resume and job applications; and maintaining contact with the social worker on his progress. This evidence shows that appellant *was* working toward his goals during the period in question in a manner contemplated by section 11403, subdivision (b). (See § 11403, subds. (b)(3) & (i); ACL 11-69 & Attachment A.) As counsel for the Bureau stated at the March 13, 2015 termination hearing, appellant was to be "applaud[ed]" for "hustling" to find a job in "a tough market for anybody, especially an 18-year-old."

In conclusion, the undisputed evidence in this case establishes that appellant satisfied the condition set forth in section 11403, subdivision (b)(3), which entitled him to financial support for the period between January 13, 2015—when he and his social worker formulated his new TILP—and March 13, 2015, the date of the termination hearing. Because the juvenile court erred when it denied appellant aid for the relevant time period based on a misunderstanding of the relevant statute, we shall reverse its March 13, 2015 order. (See *In re A.F.*, *supra*, 219 Cal.App.4th at p. 54; *In re M.C.*, *supra*, 199 Cal.App.4th at pp. 804-805.)

11

## DISPOSITION

The order appealed from is reversed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Miller, J.

*In re R.G.* (A144684)

Trial Court:                              Contra Costa County Superior Court

Trial Judge:                             Hon. Thomas M. Maddock

Attorney for Defendant and Appellant:    By Appointment of the Court of Appeal
                                         Under the First District Appellate Project

                                         Valerie N. Lankford

Attorney for Plaintiff and Respondent:   Office of the County Counsel
                                         Sharon L. Anderson
                                         Lisa O'Connor