Filed 1/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Leon E., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, Plaintiff and Respondent, v. Leon E., Defendant and Appellant. | A161063 (Contra Costa County Super. Ct. No. J18-00469) |

The California Fostering Connections to Success Act, often referred to as AB12, allows nonminor dependents to remain under the juvenile court's dependency jurisdiction and receive financial assistance until age 21 if they comply with certain statutory requirements. (Assem. Bill No. 12 (2009–2010 Reg. Sess); Assem. Bill No. 212 (2011–2012 Reg. Sess); *In re Shannon M.* (2013) 221 Cal.App.4th 282, 285 (*Shannon M.*).) In this appeal, Leon E. challenges the juvenile court's decision to terminate his status as a nonminor dependent, contending: (1) the court abused its discretion in finding he was not meeting AB12 eligibility requirements; (2) termination of the dependency was not in his best interest; and (3) termination was premature, as the Contra Costa County Children and Family Services Bureau (Bureau) failed to

comply with its obligations under Welfare and Institutions Code section 391, subdivisions (a)–(c), (h),[1] to verify that Leon had received statutorily required information, documents, and services.

During the pendency of this appeal, Leon turned 21 years old, and the Bureau now contends, among other things, that the appeal is moot because Leon has aged out of the nonminor dependency system. We conclude the appeal is not moot because a reversal could still afford Leon effective relief. As to the merits of the appeal, we conclude that while the juvenile court did not abuse its discretion in finding that Leon failed to meet AB12 eligibility requirements, the order terminating dependency jurisdiction must be reversed and the matter remanded to ensure compliance by the Bureau and the juvenile court with the procedural requirements of section 391, subdivisions (a)–(c), (h), and California Rules of Court, rule 5.555(c) and (d).[2]

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Leon, at age 15, was declared a ward of the juvenile court in Solano County after admitting to three misdemeanors and six felonies, including two sex crimes. He was removed from his home and placed at Turning Point Family Care, a residential treatment facility that focuses on the rehabilitation of sex offenders. In February 2018, Leon turned 18 years old, and he was transferred the following month back to Solano County juvenile hall after a probation violation. His case was then transferred to

---

[1]     Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2]     Further rule references are to the California Rules of Court.

2

Contra Costa County for disposition, whereupon he was committed to the Youthful Offender Treatment Program.[3]

In 2018, Leon transitioned into juvenile court as a nonminor dependent through the extended foster care program. As part of this process, Leon entered into a transitional independent living case plan (TILCP), which required him to attend a college, community college, or vocational education program, or be employed at least 80 hours per month. In June 2019, Leon moved into a transitional housing placement plus foster care (THP+FC) facility.

In July 2019, the juvenile court held the first of several hearings to review Leon's AB12 compliance. Although the probation department reported that Leon was meeting AB12 requirements and had not violated the terms of his probation, the juvenile court noted that Leon had applied to only three jobs in three months, and that he had missed curfew seven times. The court instructed the probation department to "monitor his compliance closely" and warned that "if [Leon] has not found employment and I am not satisfied that he has made good-faith, substantial efforts at the next hearing, he is not looking at continuing AB12 services."

In advance of the next review hearing, the probation department submitted a report indicating that Leon was still residing at his THP+FC facility, had begun attending Contra Costa College, and continued to attend outpatient sex offender treatment. Leon had also submitted several job applications, regularly visited a youth center to receive help in applying for jobs, and completed a course that would allow him to hold a job in security. At the October 2019 review hearing, the juvenile court found that Leon was

_____

[3]    In an unpublished opinion, we affirmed the disposition order. (*In re Leon E.* (Sept. 23, 2019, A154823 [nonpub. opn.].)

in compliance with AB12 but questioned whether he was sufficiently motivated in his job search based on reports of his case manager at the youth center.

In July 2020, Leon successfully completed juvenile sex offender treatment and moved to terminate his probation. The probation department did not contest the motion and recommended that Leon remain a nonminor dependent under the juvenile court's transition jurisdiction upon termination of probation.[4] According to the probation department, Leon remained AB12-eligible because he was employed at Core Security Solutions. The juvenile court granted Leon's motion to terminate probation.

Leon's progress then stalled. In advance of the September 2020 review hearing, the probation department submitted a report recommending that the juvenile court terminate Leon's nonminor dependency. The report indicated that since the termination of Leon's probation in July 2020, Leon had not provided proof that he was employed at Core Security Solutions, and he had not maintained sufficient contact with his probation officer. On August 10, 2020, Leon's probation officer reached out to inquire if Leon was available for a monthly face-to-face meeting, but Leon said he was " 'on vacation' " and unable to meet. Two days later, probation again contacted Leon to ask if he was home, and Leon replied, " 'no.' " On August 21, 2020, Leon told probation that he was in Washington state and was unsure when or if he would return to California. In September 2020, Leon again told probation that he was unsure when he was returning to California, and that he was " 'enjoying himself.' " He further stated that when he did return to

---

[4]      Where the rehabilitative goals of a nonminor have been met and the juvenile court's delinquency jurisdiction is no longer required, the nonminor may still participate in extended foster care under the juvenile court's "transition jurisdiction." (See § 450, subds. (a), (b).)

California, it would be to gather his belongings and return to Washington. The probation department concluded that as of September 18, 2020, Leon was not sufficiently participating in activities to remain eligible for AB12 because he had not stayed at his THP+FC facility since August 10, 2020; was not meeting with his probation officer; and was not participating in his TILCP. In its report, the probation department checked boxes indicating that Leon had been provided with "information, documents, and services as required under section 391(e) W&I."

At the September 18, 2020 review hearing, Leon's counsel argued that Leon wished to have his AB12 placement moved to Washington where he had family and friends. Counsel further indicated that Leon had sent him two screenshots of job applications, and that Leon had applied or was going to apply for two other jobs.

Leon's counsel further argued, citing an "All County Letter No. 20-45" from the California Department of Social Services (CDSS), that during the state of emergency related to the COVID-19 pandemic, the juvenile court could not terminate a nonminor dependent from AB12 due to the nonminor's failure to work or go to school. According to Leon's counsel, All County Letter No. 20-45 required counties to keep nonminor dependents on AB12 through June 30, 2020, and that this mandate had since been extended through June 30, 2021.

The juvenile court ruled that it would terminate Leon's nonminor dependency on the grounds that he was not participating in AB12 in good faith and was not residing in his THP+FC placement. The court found it had no evidence that Leon actually applied to any jobs in Washington, and that Leon's situation did not fall under All County Letter No. 20-45 because he was "not even trying. He is blowing it off and saying he is on vacation. He is

5

not responding to Probation." Leon's counsel then raised an additional argument that "[p]robation is required before terminating him to submit a 90-day transition plan, and they haven't done that." In response, the juvenile court agreed to continue the matter for a week so that "[p]robation can give him the 90-day plan. They can give him any documents he needs, and we'll do it then." Asked what documents probation had yet to provide, Leon's counsel responded, "At least the 90-day transition plan, but also an updated health and education passport and any other document required under Section 391."

At the continued hearing on September 25, 2020, Leon's counsel informed the juvenile court he had "not received verification that Probation has provided the documents required under section 391." Counsel for the probation department told the court that "[t]he probation officer is reporting that Probation submitted the 90-day transition plan. It was not signed by the minor because he was out of state. They also provided the health-and-education passport so that he can be terminated. [¶] They said that on September 21st, Probation informed the minor's attorney via email that the non-minor dependent was informed of the possibility of receiving services in Washington." Counsel for the probation department further indicated that she "ha[d] copies of the passport and the 90-day transition plan with me as well." Leon's counsel requested that those documents be filed and copies provided to him, and that the court continue the nonminor dependency, citing an exhibit to his opposition papers showing that Leon had submitted eight job applications. The juvenile court remarked, "I have no proof that this is even him applying. It doesn't say he is the person applying. It doesn't say any dates he applied here."

6

The juvenile court terminated Leon's nonminor dependency, finding that he did not meet any of the AB12 criteria, and that his failure to do so was not due to "any inability to work or because he's lost his job because of COVID-19; I find that it is because he doesn't want to go to work. He doesn't want to apply for jobs. [¶] He wants to be on vacation; he wants to be having fun. That's what he's told Probation. He's entitled to do that, but that does not make him eligible for non-minor dependent status." The court further found that Leon "has received the written information that is required; that he has been provided all the information that he is required to be provided."

On September 29, 2020, Leon filed a notice of appeal.

In February 2021, Leon turned 21 years old.

### DISCUSSION

Under AB12, juvenile courts may retain jurisdiction over and provide extended foster care benefits to a nonminor dependent until he or she reaches the age of 21. (§ 303, subd. (a); *Shannon M.*, 221 Cal.App.4th at pp. 284–285.) A nonminor dependent is a foster child who has attained the age of 18, is under the care and responsibility of the child welfare department, and is participating in a TILCP as described by section 11403. (§ 11400, subd. (v).)

To be eligible to continue receiving benefits, a nonminor dependent must satisfy at least one of the following conditions: "(1) The nonminor is completing secondary education or a program leading to an equivalent credential. [¶] (2) The nonminor is enrolled in an institution which provides postsecondary or vocational education. [¶] (3) The nonminor is participating in a program or activity designed to promote, or remove barriers to employment. [¶] (4) The nonminor is employed for at least 80 hours per month. [¶] (5) The nonminor is incapable of doing any of the activities

7

described in subparagraphs (1) to (4), inclusive, due to a medical condition[.]" (§ 11403, subd. (b).)

The juvenile court must conduct a review hearing every six months to monitor a nonminor dependent's eligibility for continuing dependency jurisdiction and AB12 benefits. (§§ 366.3, subd. (d), 391, subds. (a)–(c).) Section 391 "authorizes the juvenile court to terminate its jurisdiction over a nonminor dependent in foster care who is between the ages of 18 and 21, but only in three narrowly defined circumstances[.]" (*In re Nadia G.* (2013) 216 Cal.App.4th 1110, 1113 (*Nadia G.*).) Those circumstances are: the nonminor does not wish to remain subject to dependency jurisdiction; the nonminor is not participating in a reasonable and appropriate TILCP; or after reasonable and documented efforts, the nonminor cannot be located. (§ 391, subds. (e)(1)(A)–(B), (f).)

"The dependency court shall not terminate jurisdiction over a nonminor unless a hearing is conducted pursuant to [section 391]. At any hearing at which the court is considering terminating jurisdiction over a nonminor, the county welfare department shall do all of the following: [¶] (1) Ensure that the dependent nonminor is present in court, unless the nonminor does not wish to appear in court and elects a telephonic appearance, or document reasonable efforts made by the county welfare department to locate the nonminor when the nonminor is not available. [¶] (2) Submit a report describing whether it is in the nonminor's best interests to remain under the court's dependency jurisdiction, . . . . [¶] (3) If the county welfare department recommends termination of the court's dependency jurisdiction, submit documentation of the reasonable efforts made by the department to provide the nonminor with the assistance needed to meet or maintain eligibility as a

8

nonminor dependent, as defined in paragraphs (1) to (5), inclusive, of subdivision (b) of Section 11403. . . ." (§ 391, subd. (d).)

The county welfare department's report must also "verify[] that the information, documents, and services required under [section 391] subdivisions (a) and (b),"[5] as well as other forms of information, documents, and services have been provided to the nonminor, including: assistance in accessing an independent living aftercare program in the nonminor's county of residence; a "90-day transition plan" pursuant to section 16501.1; a "health and education summary" pursuant to section 16010, subdivision (a); the Judicial Council form for petitioning to resume dependency jurisdiction; written verification that the eligible nonminor is enrolled in Medi-Cal and the nonminor's Medi-Cal Identification Card; continued and uninterrupted enrollment in Medi-Cal for eligible nonminors pursuant to sections 14005.28 or 14005.285; and assistance with referrals to transitional housing, and obtaining employment or financial support. (§ 391, subd. (h).)

---

[5] The information, documents, and services described in section 391, subdivisions (a) and (b), are as follows: the nonminor's social security card, certified birth certificate, and driver's license; assistance in obtaining employment or applying for college or a vocational training program or educational institution and in obtaining financial aid, if applicable; written information regarding the preference of state agencies and participating county agencies to provide assistant or internship positions to current or former foster dependent children; written information regarding financial literacy programs and other available resources to obtain financial literacy skills; the nonminor's Medi-Cal Benefits Identification Card; a letter prepared by the county welfare department that includes information on the nonminor dependent; death certificates of parents, if applicable; proof of the nonminor's citizenship or legal residence, if applicable; an advance health care directive form; the Judicial Council form for petitioning to resume dependency jurisdiction under section 388; and written information regarding the nonminor's eligibility for CalFresh benefits. (§ 391, subds. (a), (b).)

These and other requirements are reiterated in rule 5.555, which was adopted by the Judicial Council to implement AB12. (*Shannon M.*, *supra*, 221 Cal.App.4th at p. 300.) Rule 5.555(c) states in relevant part that "[t]he report prepared by the social worker or probation officer for a hearing under this rule must, in addition to any other elements required by law, include: . . . (J) Verification that the nonminor was provided with the information, documents, and services under section 391(d)."[6] (Rule 5.555(c)(1)(J).) Additionally, "[t]he social worker or probation officer must also file with the report the nonminor's: . . . Completed 90-day Transition Plan." (Rule 5.555(c)(3)(C).) "The social worker's or probation officer's report and all documents required by [rule 5.555(c)](2)–(3)] must be filed with the court at least 10 calendar days before the hearing, and the social worker or probation officer must provide copies of the report and other documents to the nonminor, the nonminor's parents, and all attorneys of record." (Rule 5.555(c)(4).)

Rule 5.555 also requires the juvenile court to make specific findings and orders at the termination hearing, including whether it is in the nonminor's best interest to remain under the court's jurisdiction; whether the nonminor meets one or more of the eligibility criteria in section 11403, subdivision (b), to remain as a nonminor dependent; and whether the

---

[6]    Here, we note that rule 5.555(c)(1)(J) and (d)(1)(J) refer to "the information, documents, and services as required under section 391(d)," while the probation department's report and the juvenile court's order terminating the dependency referred to the same substantive requirement, but under "section 391(e)." Reasonably construed, these appear to be references to former versions of section 391. (See, e.g., § 391, former subd. (e), added by Stats. 2010, ch. 559, § 28.) In its current version, section 391 sets forth the information, documents, and services requirements in subdivisions (a)–(c), and (h). (See § 391, subds. (a)–(c), (h), added by Stats. 2019, ch. 438, § 2 (AB 718), eff. Jan. 1, 2020.)

nonminor was provided with "the information, documents, and services as required under section 391(d),"[7] and if not, whether jurisdiction should be continued until this requirement is satisfied. (Rule 5.555(d)(1)(B), (C), (J).) Additionally, the juvenile court must find "[w]hether the nonminor's . . . 90-day Transition Plan is a concrete individualized plan that specifically covers the following areas: housing, health insurance, education, local opportunities for mentors and continuing support services, workforce supports and employment services, and information that explains how and why to designate a power of attorney for health care." (Rule 5.555(d)(1)(L)(iii).)

### A. Mootness

As a threshold matter, the Bureau argues the appeal became moot in February 2021 when Leon turned 21 years old. This mootness argument is based on the fact that nonminor dependency jurisdiction cannot be extended after a nonminor turns 21 years old. (§§ 303, subd. (a), 11400, subd. (v)(1).) However, " '[t]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.' " (*In re David B.* (2017) 12 Cal.App.5th 633, 644 (*David B.*).)

Leon argues that under All County Letter No. 21-96, issued by the CDSS in August 2021, he was entitled to continue receiving extended foster care through December 31, 2021.[8] By its terms however, All County Letter

---

[7]     See footnote 6, *ante*.

[8]     Leon previously requested, and we granted, judicial notice of All County Letter No. 21-96. (Evid. Code, § 452, subd. (c) [permissive judicial notice of official acts of executive department]; *N.S. v. Superior Court* (2016) 7 Cal.App.5th 713, 720, fn. 5 [judicial notice of All County Letter].) " 'The standard for judicial review of agency interpretation of law is the independent judgment of the court, giving deference to the determination of

11

No. 21-96 applies only if Leon lost employment or otherwise could not meet a participation condition "due to the impact of COVID-19"—a circumstance that does not appear supported by the record before us. Moreover, even if the protections outlined in All County Letter No. 21-96 apply to Leon, the extended deadline of December 31, 2021 already passed while this appeal was pending. As a practical matter, given the timing of the events in this appeal,[9] a final decision simply could not have been issued in time for the court to order continued foster care services before the extended deadline.

That said, we conclude the appeal is not moot in light of Leon's claim that the Bureau failed to provide statutorily required information, documents, and services. Assuming the juvenile court prematurely terminated jurisdiction without the Bureau's compliance with section 391, subdivisions (a)–(c) and (h), Leon would be entitled to relief in the form of his verified receipt of the required information, documents, and services, as well as the juvenile court's related findings under rule 5.555(d)(1)(J). Indeed, rule 5.555(d)(1)(N), expressly contemplates that even "[f]or a nonminor who has attained 21 years of age," the juvenile court must still make certain findings, including that the nonminor was provided with "the information, documents, and services required under section 391(e),"[10] and that "[t]he 90-day

---

the agency appropriate to the circumstances of the agency action.' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8.)

[9]     The notice of appeal was filed less than five months before Leon turned 21 years old, and Leon requested and received multiple extensions of time to file his opening and reply briefs. The matter was not fully briefed until November 29, 2021. In cases involving such a "narrow window of time," it may be necessary to seek review by writ petition for peremptory relief. (See *David B.*, *supra*, 12 Cal.App.5th at p. 655.)

[10]     See footnote 6, *ante*.

12

Transition Plan is a concrete, individualized plan that specifically covers" certain specified topics.[11]

In short, because this court can provide effective relief to Leon in the event of reversible error, the appeal is not moot. (*David B.*, *supra*, 12 Cal.App.5th at p. 644.)

## B. Termination of Dependency Jurisdiction

Leon contends the juvenile court abused its discretion in terminating him as a nonminor dependent because he was meeting AB12's eligibility requirements, and because termination was not in his best interest.

We review a juvenile court's termination of jurisdiction for abuse of discretion. (*In re A.A.* (2016) 243 Cal.App.4th 765, 772.) In so doing, we will not lightly substitute our decision for that rendered by the juvenile court; rather, we indulge all reasonable inferences to support the juvenile court's decision and will not disturb its findings when there is substantial evidence to support them. (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) The test for abuse is whether the trial court exceeded the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) As we now explain, we find no abuse of discretion in the juvenile court's finding that Leon failed to maintain AB12 eligibility.

There appears no dispute that Leon was not completing secondary education; nor was he enrolled in a postsecondary or vocational education institution, or employed at least 80 hours a month (or incapable of such activities due to a medical condition) at the time of termination. (§ 11403,

---

[11] Leon additionally contends the appeal is not moot because in the event of reversal, he would be entitled to relief in the form of lost financial assistance benefits. Because this argument is unsupported by citation to legal authorities or the record, and because we find the appeal is not moot for other reasons, we express no opinion on the matter.

13

subd. (b).) The dispute concerns whether he was sufficiently "participating in a program or activity designed to promote, or remove barriers to employment." (§ 11403, subd. (b)(3).) As Leon argues, satisfaction of this requirement is not limited to organized programs, but may include "other activities that are designed to promote employment," including "primarily self-directed" activities such as applying for jobs online and following up with prospective employers. (*In re R.G.* (2015) 240 Cal.App.4th 1090, 1098, 1099–1100.)

Even so, the juvenile court could reasonably conclude from the evidence that Leon was not engaged in sufficient activities, even self-directed ones, to promote his employment. Viewing the record favorably to the juvenile court's decision, the court could reasonably find that Leon failed to reside at his THP+FC since August 2020 and went to Washington without telling his probation officer or maintaining consistent contact while he was there. Once in Washington, Leon told his probation officer he was on " 'vacation' " and " 'enjoying himself.' " There was no evidence that Leon experienced any difficulties applying for employment in Washington due to the COVID-19 pandemic or other circumstances. Although Leon submitted screenshots of various job applications in opposition to the termination proceedings, it was not unreasonable for the juvenile court to discount the probative value of this evidence given that the screenshots did not show Leon's name or the dates of application.[12] On this record, it was not unreasonable for the juvenile court to conclude that Leon was not making a concerted effort to maintain AB12 eligibility for over two months.

---

[12] Leon's contention on appeal that he "immediately" began applying for jobs in Washington is not supported by the record. In the portion of the record Leon cites, his counsel told the juvenile court he was "not sure when [Leon] submitted" any of the referenced applications.

14

In *Nadia G.*, *supra*, 216 Cal.App.4th 1110, the appellate court similarly held the juvenile court did not abuse its discretion in finding that the nonminor dependent was not participating in her TILCP where she had no job and had not enrolled in school until one week before the termination hearing. (*Nadia G.*, at pp. 1119–1121.) Leon attempts to distinguish *Nadia G.* on the grounds that unlike the nonminor in that case, he had no history of lying, and he was simply having difficulty finding employment during the COVID-19 pandemic. These points are unpersuasive. Even if Leon did not have a history of lying, the record, viewed favorably to the juvenile court's decision, supports the inference that Leon had a history of lacking motivation in searching for employment. Consequently, the court was entitled to draw upon that history in determining whether Leon was maintaining AB12 compliance. Leon points to nothing in the record compelling the conclusion that his failure to find employment in Washington was due to the COVID-19 pandemic, and the court was entitled to rely on his statements that he was on " 'vacation' " to infer that he was not applying for jobs. The court could also reasonably question whether the undated job applications submitted by Leon were merely part of a belated attempt to comply with the TILCP on the eve of the termination hearing. Such factual determinations are not subject to reweighing on appeal. (See *Nadia G.*, at p. 1120.)

Also unpersuasive is Leon's attempt to characterize his situation as showing a mere gap in eligibility that should not result in the loss of AB12 benefits. Because we must view the record in a light most favorable to the juvenile court's decision, we conclude it was not unreasonable for the court to find that Leon's conduct went beyond an inadvertent gap in eligibility, demonstrating he had stopped making a reasonable and concerted effort to apply for work for several months.

15

Leon further contends the juvenile court abused its discretion because terminating the nonminor dependency was not in Leon's best interest. We again are not persuaded. "Though Section 391 requires consideration of 'whether it is in the [nonminor dependent's] best interests to remain under the court's dependency jurisdiction,' the juvenile court is nonetheless authorized to terminate jurisdiction over a nonminor dependent if he or she is not participating in her case plan. . . . As it is axiomatic that it would be detrimental for *any* nonminor dependent to stop receiving services, the mere assertion of such detriment without any proof of reasonable participation by the nonminor in his or her case plan does not demonstrate that the court abused its discretion." (*In re Aaron S.* (2015) 235 Cal.App.4th 507, 519–520 (*Aaron S.*).) In light of Leon's lack of compliance and failure to make adequate progress toward his employment goals, the juvenile court could reasonably determine that rewarding Leon with continued nonminor dependent status was not in his best interest.

For these reasons, we conclude the juvenile court did not abuse its discretion in finding that Leon failed to maintain compliance with AB12 eligibility requirements.

### C. Section 391 Compliance

As previously detailed, section 391 and rule 5.555 contain several provisions requiring that county welfare departments verify they have made certain document and informational disclosures to nonminor dependents, and that juvenile courts make related findings in order to terminate dependency jurisdiction. "If the [county welfare department] has not met the section 391 requirements, the juvenile court is forbidden to terminate its jurisdiction." (*Nadia G.*, *supra*, 216 Cal.App.4th at p. 1122, citing rule 5.555(d)(2)(E)(i); see also, rule 5.555(d)(2)(E)(vi) [court may order termination of jurisdiction "only

16

after entering" findings regarding 90-day transition plan].)  Thus, in *Nadia G.*, the appellate court held that although the juvenile court did not err in finding that a nonminor dependent failed to participate in her TILCP, termination of jurisdiction was "premature" because the county welfare department had failed to comply with its obligations under section 391, and the juvenile court failed to make related findings as required by California Rules of Court, rule 5.555.  (*Nadia G.*, at pp. 1121–1123.)  Consequently, *Nadia G.* reversed the order of termination and remanded the matter so that the county welfare department could file the necessary reports and the court could make the required findings.  (*Id.* at pp. 1123–1124.)

The same disposition is warranted here.  Although the probation department checked off boxes in its section 391 report indicating that Leon had been provided with information, documents, and services as required by "section 391(e)"[13] and the juvenile court stated its finding that Leon had been provided with all information required by law, the Bureau concedes on appeal "that only some of Probation's documents were filed on September 25, 2020." Unhelpfully, the Bureau does not clarify which documents were not provided.

We note that at the very least, a completed 90-day transition plan was not attached to the probation department's section 391 report.  (See rule 5.555(c)(3)(C) [social worker or probation officer must "file" 90-day transition plan "with the report"].)  While counsel for the probation department told the juvenile court that the plan had been "submitted," and that she had copies of it and the health and education summary in her possession, this did not satisfy the Bureau's obligation to "verify[]" Leon's receipt of said documents prior to the hearing, let alone 10 calendar days before it.  (Rule 5.555(c)(4).)  Moreover, we see no indication in the record that the juvenile court received

---

[13]     See footnote 6, *ante*.

17

and reviewed the 90-day transition plan prior to issuing its decision to terminate jurisdiction or made findings regarding its sufficiency as required under rule 5.555(d)(1)(L)(iii). On this record, and in light of the Bureau's concession, substantial evidence does not support the juvenile court's finding that Leon was provided with all the information, documents, and services required under 391, subdivisions (a)–(c), and (h).

The Bureau attempts to avoid the consequences of its noncompliance by arguing that Leon forfeited this claim of error, and that in any event, he was not prejudiced. We disagree. At both September 2020 hearings, Leon's counsel specifically raised the Bureau's noncompliance with section 391, and in particular, its failure to serve the 90-day transition plan. Indeed, the hearing was continued from September 18 to the following week precisely because of counsel's argument that the Bureau had failed to provide documents required under section 391, including the 90-day transition plan. Although the juvenile court failed to acknowledge the Bureau's continuing noncompliance, there is no question the matter was sufficiently brought to the court's attention for purposes of preserving the claim on appeal.

Nor do we find the error harmless. The Bureau does not contend it has substantially complied with section 391, subdivisions (a)–(c) and (h) by providing the same information, documents, and services in alternative ways. (See *Aaron S.*, *supra*, 235 Cal.App.4th at p. 521 [failure to provide 90-day transition plan harmless because department separately provided information regarding each category that would have been included in plan].) Because the record is unclear as to what documents the Bureau admittedly failed to provide, we cannot say on this record that Leon was not prejudiced. Even if the Bureau's noncompliance with section 391, subdivisions (a)–(c) and (h) has no impact on the ultimate termination decision due to Leon aging out

18

of the nonminor dependency system, there is no proof that Leon obtained the information, documents, and services that are intrinsically important in his transition to independence. The Bureau's verification was necessary to confirm Leon's receipt of such critical documents as his social security card, birth certificate, driver's license, Medi-Cal benefits identification card, and his completed 90-day transition plan. (§ 391, subds. (a)(1)(A)–(C), (b)(1)–(4), (h)(2)(E).) The absence of that verification cannot be deemed harmless.

Moreover, the Bureau's compliance was necessary for the juvenile court to find that the 90-day transition plan is sufficient to carry out its purposes. (Rule 5.555(d)(1)(L)(iii).) "The 90-day transition plan is intended to provide minors and nonminors who are exiting dependency jurisdiction with resources to assist in transitioning to independence." (*Aaron S.*, *supra*, 235 Cal.App.4th at p. 521.) The 90-day transition plan must provide current information "personalized" to the particular needs of the nonminor dependent and include "options regarding housing, health insurance, education, local opportunities for mentors and continuing support services, and workforce supports and employment services, a power of attorney for health care, and information regarding the advance health care directive form." (§ 16501.1, subd. (g)(16)(B); *Aaron S.*, at p. 521.) These requirements are for the benefit of the nonminor in his or her efforts to transition from dependency, and thus, it is vital in and of itself that the Bureau verifies—and the juvenile court finds—that the nonminor dependent received all that the law requires.

For these reasons, we conclude that although the record supports the juvenile court's finding that Leon was not maintaining AB12 eligibility, the order terminating dependency jurisdiction was premature and must be reversed so that the Bureau and the court can comply with the procedural requirements outlined above. (*Nadia G.*, *supra*, 216 Cal.App.4th at p. 1123.)

19

## DISPOSITION

The order terminating jurisdiction is reversed, and the matter is remanded to ensure that the Bureau has complied with the requirements of sections 391, subdivisions (a)–(c), (h), and rule 5.555(c)(1)(J) and (c)(3)(C), and that the juvenile court has made related findings and orders required under rule 5.555(d)(1)(J), (d)(1)(L)(iii), (d)(1)(N), and (d)(2)(E), and (F).[14]

---

[14] To be clear, our decision does not entail a new assessment of whether termination is in Leon's best interest, as Leon is now beyond the age eligibility for nonminor dependency. Our decision to remand is merely to ensure that the Bureau and juvenile court fully comply with the procedural requirements discussed in this opinion.

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.

A161063/*In re Leon E.*

**In re Leon E.**
**(A161063)**

Trial Court:      Contra Costa County

Trial Judge:      Hon. Leslie G. Landau

Attorneys:

      Deborah Rodríguez, under appointment by the Court of Appeal, for Defendant and Appellant.

      Mary Ann McNett Mason, County Counsel, and Monica A. Mueller, Deputy County Counsel, for Plaintiff and Respondent.